## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTI MCALPIN, individually and on behalf of all others similarly situated, | Case No. |
| | **1:25-CV-621** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| LIVING PROOF HEALTH INSURANCE AGENCY LLC | |
| Defendant. | |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Kristi McAlpin ("Ms. McAlpin"), by her undersigned counsel, for this class action complaint against Defendant Living Proof Health Insurance Agency LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.    INTRODUCTION

1.    <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls, after she had requested they stop, in violation of the internal do not call regulations of the TCPA.

4.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who had previously asked to no longer receive calls.

## II.    PARTIES

5.    Plaintiff McAlpin is an individual who resides in the Eastern District of Pennsylvania.

6.    Defendant Living Proof Health Insurance Agency LLC is a corporation with its headquarters and principal place of business in Kokomo, Indiana.

## III.    JURISDICTION AND VENUE

7.    <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.    <u>Personal Jurisdiction</u>: This Court has general personal jurisdiction over Defendant because it is headquartered and has its principal place of business in Indiana.

9.    <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

## IV.    FACTS

<u>The TCPA Requires Entities To Have Sufficient Policies in Place To Prevent Unwanted Calls Before Making Telemarketing Calls</u>

10.    The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

11.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

12.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

13.     These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

14.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

15.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

**Unsolicited Telemarketing to Plaintiff**

16.     Plaintiff McAlpin is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.     Plaintiff McAlpin's cellular telephone number, (610) XXX-XXXX, is a telephone number that is used for residential purposes.

18.     Plaintiff McAlpin uses the telephone number for her own personal, residential, and household needs and reasons.

19.     The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20.     Plaintiff McAlpin was seeking health insurance in December of 2024, so she visited a health insurance comparison website.

21.     As a result, Plaintiff started receiving multiple calls from insurance companies looking to sell her health insurance, including the Defendant.

22.     Because Plaintiff was inundated with the volume of calls she was receiving from the Defendant, shortly after submitting her information, the Plaintiff explicitly requested that the calls from the Defendant stop.

23.     During this call, the Defendant's agent stated that the calls would not stop, refused to place the Plaintiff's number on the Defendant's do not call list, and stated that they would continue to call.

24.     The Plaintiff made this request that the calls from the Defendant stop in approximately late December of 2024.

25.     However, the calls from Defendant continue, including to this very day.

26.     Defendant continues to call from the same set of telephone numbers, including 610-542-9409, 610-542-9405, 610-619-1049, 610-619-1063, and 610-619-1064.

27.     The Plaintiff attempted to block the numbers, but this task was made more difficult by the fact that the Defendant routinely cycles through telephone numbers.

28.     Each call which the Plaintiff answered, an agent on the other line attempted to sell and enroll her in a health insurance plan.

29.     The agents state that they are from the fictitiously named "Health Enrollment Center" and state that they are looking to give quotes on and sell the Plaintiff a health insurance plan.

30.     However, whenever the Plaintiff started asking any questions or reiterated her requests not to call, the agents would either become verbally abusive or simply hang up.

31.     On March 7, the Plaintiff called back the 610-619-1049 number and spoke to an agent who was initially hesitant to identify the company he worked for, stating that he was with the "Health Enrollment Center," but ultimately confirmed that he worked for the Defendant Living Proof Health Insurance Agency.

32.     Insurance agents who work for the Defendant describe their jobs as one of "cold calling" people to give them "health insurance quotes" for "sales and upselling":



33.     The calls were thus plainly sales call to sell health insurance and upsell the Plaintiff to a more expensive health insurance plan.

34.     The Plaintiff has received hundreds of telephone calls from the Defendant, from the above-described caller IDs, from December of 2024 and continuing through present.

35.     During a call on March 10, 2025, the Plaintiff reiterated her request to not receive calls from the Defendant, but was laughed at and stated "You're wasting your money [hiring a lawyer.] We deal with it all the time. It ain't going to go nowhere."

36.     In fact, the messages continued through the filing of this Complaint, despite the Plaintiff making yet another "Stop" request in December:

37.     The Plaintiff did not ask for the calls and explicitly asked that they stop.

38.     Because they were sent to encourage the purchase of health insurance, the calls were telemarketing.

39.     A reasonable seller would investigate into the reasons why they would refuse to place someone on their internal do not call list.

40.     Upon information and belief, based on the Defendant's behavior, Defendant does not possess an internal do not call policy.

41.     Plaintiff's privacy has been violated by the above-described telemarketing calls messages.

42.     Plaintiff effectively revoked her consent to receive these calls.

43.     The aforementioned calls that were sent to the Plaintiff after she asked not to be called were unwanted.

44.     The calls were non-consensual encounters.

45.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls were frustrating, annoying, and particularly difficult to block, which rendered phones unavailable for legitimate communication and other legitimate uses, including while driving, working, and performing other critical household tasks.

## V.    CLASS ACTION ALLEGATIONS

46.    <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings

this case on behalf of the Class (the "Class") defined as follows:

> **<u>Internal Do Not Call Class</u>**: All persons within the United States to whom: (1)
> Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more
> telemarketing calls in a 12-month period, (3) who had previously asked for the
> calls to stop or for a copy of Defendant's Do Not Call Policy and (4) within the
> four years prior to the filing of the Complaint.

47.     Excluded from the Class are counsel, Defendant, any entities in which Defendant

has a controlling interest, Defendant's agents and employees, any judge to whom this action is

assigned, and any member of such judge's staff and immediate family.

48.    The Class, as defined above, is identifiable through telephone records and

telephone number databases.

49.    The potential members of the Class likely numbers at least in the hundreds

because of the *en masse* nature of telemarketing calls.

50.    Individual joinder of these persons is impracticable.

51.    Additionally, the disposition of the claims in a class action will provide

substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

52.    Plaintiff is a member of the Class and will fairly and adequately represent and

protect the interests of the Class as she has no interests that conflict with any of the class

members.

53.    Plaintiff and all members of the Class have been harmed by the acts of Defendant,

including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the

intrusion on their telephone that occupied it from receiving legitimate communications.

54.    This class action complaint seeks injunctive relief and money damages.

55.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant systematically made calls without maintaining an internal do not call list or policy;

b.     whether Defendant made calls to Plaintiff and members of the Internal Do Not Call Class after having received a stop request; and

c.     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

56.     Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

57.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

59.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of

separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

60.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))
(On Behalf of Plaintiff and the Internal Do Not Call Registry Class)**

61.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop, and without maintaining an internal do not call list or policy, among other procedural requirements, required by law.

63. Defendant's violations were negligent, willful, or knowing.

64. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls without sufficient policies and procedures in the future;

E. An award to Plaintiff and the Class of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.        DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 31st day of March, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
S.D. Indiana Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com